```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY JO TAYLOR,

                    Plaintiff,                05-CV-6136T

v.                                            DECISION
                                              and ORDER
JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____
```

INTRODUCTION

Plaintiff, Mary Jo Taylor ("plaintiff" or "Taylor"), filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g)and 1383(c)(3), seeking review of a final decision by the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). On November 17, 2005, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the plaintiff moved for judgment on the pleadings. On November 21, 2005, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff is not eligible for SSI pursuant to Rule 12(c) of the Federal Rule of Civil Procedure.

For the reasons that follow, this Court finds that substantial evidence supports the Commissioner's decision that plaintiff is not eligible for SSI. Accordingly, defendant's motion for judgment on

the pleadings affirming her final decision that the plaintiff is not eligible for SSI is granted.

## PROCEDURAL HISTORY

On December 18, 2002, the plaintiff filed an application for SSI benefits alleging disability as of June 2002. (T. 46-47).[1] This application was denied on March 14, 2003. (T. 29-32). The plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (T. 33). On May 7, 2004, a hearing was held before ALJ Randall Moon at which the plaintiff and her counsel, a paralegal from Legal Assistance of the Fingerlakes appeared. (T. 180-232). In a decision dated October 1, 2004, the ALJ found that the plaintiff was not disabled. (T. 13-20). On January 27, 2005, the Appeals Council denied the plaintiff's request for review, and thus, the decision of ALJ Moon became the final decision of the Commissioner. (T. 5-8).

## BACKGROUND

A. <u>Non-Medical Evidence</u>

The plaintiff was thirty-three years old at the time of the ALJ's decision. (T. 185) She has a tenth grade education. (T. 59, 190). There is conflicting information as to if she was in special education classes. (T. 59, 119, 122). Plaintiff was last employed as a home health aide. (T. 54, 192). She also has been employed as a

---

[1] All citations "T" refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer, which include, *inter alia*, plaintiff's medical records, transcripts of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff SSI benefits.

2

washer and folder in a laundry and as a price marker and shelf stocker at a discount store. (T. 54, 192).

The plaintiff alleged that she was no longer able to work due to her back pain, anxiety, and depression. (T. 92). The plaintiff complained that she had pain in her shoulders when reaching and lifting. (T. 197). She stated that physical therapy has not helped alleviate her pain. (T. 193-94). The plaintiff complained of anxiety and panic attacks that occur two to three times week, difficulty concentrating and fatigue. (T. 199, 215, 217, 218). She maintained that she rarely drives by herself due to her problems with anxiety. (T. 188)

The plaintiff lives in a private home with her husband and three children. (T. 186). She testified that she drove short distances to go to the store and medical appointments. (T. 68, 188). The plaintiff also testified that she performs chores such as cooking, washing dishes, laundry, grocery shopping, paying bills, and helping care for her pets. (T. 66, 68, 208, 209, 213). She testified that she usually stays in bed three quarters of a day resting, sometimes staying in bed all day. (T. 207, 217).

Peter Manzi, Ph.D., an impartial vocational expert testified at the administrative hearing that the plaintiff could not perform her past relevant work as a home health aide but he identified specific occupations which were suited to the plaintiff's residual functional

capacity and vocational profile such as a laundry sorter and photocopy machine operator. (T. 227, 228).

B. <u>Medical Evidence</u>

During February and March 2001, the plaintiff was treated by Nurse Practitioner, Connie Christensen at Dr. John Cooley's office for anxiety and social phobia. (T. 110-112). Christensen increased the plaintiff's dosage of Paxil after each visit. <u>Id.</u>

At an office visit in June 14, 2001, the plaintiff expressed the opinion that she could not work due to her social anxiety. (T. 109-110). The plaintiff was encouraged to obtain a mental health evaluation. <u>Id.</u>

The plaintiff attended five visits at the John Kelly Behavioral Health Center. (T. 97). She was discharged for non-attendance because she refused to participate in group therapy. <u>Id.</u> Dr. Craig Sandberg diagnosed the plaintiff with anxiety disorder, a parent child relational problem and co-dependent and avoidant traits. <u>Id.</u> He rated her a Global Assessment Functioning (GAF) score of 55 which indicates moderate difficulty in social, occupational or school functioning. <u>Id.</u>

In October and December 2001, Dr. John Cooley, treated plaintiff for low back pain and an anxiety disorder for which he prescribed Paxil. (T. 105). In progress notes in May and August 2002, Dr. Cooley reported that plaintiff's range of motion of her

lumbosacral spine was fairly good and that the Paxil was helpful for her anxiety. (T. 103-105).

In October 2002, X-rays of plaintiff's lumbosacral spine revealed degenerative disc disease at L5-S1. (T. 103, 115).

In November 2002, the MRI of plaintiff's lumbosacral spine revealed L5-S1 disc degeneration without herniation, stenosis, or significant impingement on the spinal canal or nerve root. (T. 102, 114).

On November 11 and 26, 2002, plaintiff saw Dr. Cooley where she expressed a depressive sense, however, he noted she was "fairly bright in her conversation" and "somewhat inappropriate in describing her degree of distress." (T. 103).

On November 11, 2002, Dr. Cooley wrote a note stating that plaintiff was unable to work due to low back pain. (T. 149). He estimated that plaintiff could return to limited activity in January of 2003. Id.

Plaintiff returned to see Dr. Cooley on January 16, 2003, requesting a note stating that she was still unable to work. (T. 99). Dr. Cooley stated that plaintiff remained disabled due to her chronic lower back pain and depression with social anxiety. Id. He prescribed physical therapy and provided plaintiff with a note stating that she was disabled until June of 2003. (T. 100).

Dr. Ramon Medalle examined plaintiff consultatively on February 6, 2003. (T. 121-24). He diagnosed plaintiff with discogenic

disorder of the lumbar spine, history of major depression and history of panic attacks. (T. 124). Based on his examination of the plaintiff, Dr. Medalle stated that plaintiff was only mildly limited with respect to prolonged sitting, prolonged standing and repeated bending and lifting. Id.

On February 6, 2003, Dr. Christine Ransom, Ph. D., conducted a psychiatric evaluation and stated that plaintiff would have mild difficulty performing complex tasks independently and dealing with stress. (T. 117-120). Dr. Ransom concluded that plaintiff's depression was mild and her anxiety disorder was in remission. (T. 120).

On March 13, 2003, Dr. Morris Newman, a State Agency psychological consultant, completed an assessment of plaintiff's mental ability. (T. 133). Dr. Newman stated that socially, plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors was moderately limited, but her abilities to interact appropriately with the general public, get along with coworkers or peers and maintain socially appropriate behavior were not significantly limited. Id.

In May 2003, Dr. Eileen Rosen examined plaintiff and reported that her panic attacks were less frequent, perhaps two per month, and that she was able to control them behaviorally. Dr. Rosen stated that plaintiff's depression/anxiety was responding well to medication. (T. 170).

6

On June 24, 2003, plaintiff visited Dr. Magda Daoud, as her new primary care physician. (T. 168). Dr. Daoud observed that plaintiff was in no apparent distress and her neurological examination was normal. Dr. Daoud noted that the plaintiff "might suffer from hypothyroid problem or might have fibromyalgia because of several tender points and muscle pain." (T. 169). Dr. Daoud noted an impression of degenerative disc disease of the lumbar spine with chronic back pain, fatigue as well as depression which was controlled by Paxil. Id.

On September 9, 2003, the plaintiff visited Dr. Daoud complaining of right shoulder pain. (T. 160). Dr. Daoud noted rotator cuff tendonitis and fibromyalgia. Id.

On October 14, 2003, plaintiff saw Dr. Daoud complaining of increased anxiety and depression because of her family problems. (T. 158). Dr. Daoud increased the plaintiff's dosage of Paxil. Id.

On November 17, 2003, plaintiff saw Dr. Daoud complaining of poor sleep and requesting assistance in quitting smoking. (T. 155). Dr. Daoud reported that her examination was normal. Id.

On December 30, 2003, Dr. Daoud saw plaintiff for a follow up. (T. 153). Dr. Daoud noted a normal examination except that plaintiff had pain on internal rotation of left shoulder. (T. 153).

On February 27, 2004, plaintiff saw Dr. Daoud complaining of insomnia, but that she admitted that she had a high caffeine intake.

(T. 151). Dr. Daoud found that plaintiff was in no acute distress and that she sat comfortably. (T. 151).

## LEGAL STANDARD

A. Jurisdiction and Scope of Review-

42 U.S.C. § 405(g), grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

B. Standard for Eligibility for Supplemental Security Income-

In order to establish a disability under the Act, the plaintiff has the burden of demonstrating (1) that he was unable to engage in substantial activity by reason of a physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such an impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. 42 U.S.C. § 1382c

(a)(3); see also Barnhart v. Walton, 535 U.S. 212, 215 (2002). Furthermore, eligibility for Supplemental Security Income based upon disability is conditioned upon compliance with the income and resource requirements of 42 U.S.C.§§ 1382a and 1382b.

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

DISCUSSION

Here, the ALJ properly followed the five step procedure. The ALJ found that the plaintiff: (1) had not engaged in substantial gainful employment at any time since her alleged disability onset date of June 2002; (2) suffered from a degenerative disc disease, depression and anxiety seizure disorder which constituted severe impairments; (3) did not have an impairment listed in Appendix 1 of the C.F.R, Part 404, Subpart P; and(4) could not perform any of her prior jobs, but could perform a range of light work. (T. 15-20). Lastly, the ALJ proceeded to the fifth and final step of the sequential evaluation process by using medical-vocational rule 201.25 set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids") as a framework for decision-making and also relied on vocational expert testimony to find that there were a significant number of jobs in the national economy which the plaintiff could perform such as a laundry sorter, photocopy machine operator, or a small products assembler. The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled, her motion for judgment on the pleadings should be granted.

The plaintiff argues that the ALJ erred when he 1) failed to afford appropriate weight to the opinions of the claimants' treating sources; 2) disregarded the treating physician's diagnosis of fibromyalgia; 3) failed to properly evaluate Ms. Taylor's

credibility; 4) ignored substantial evidence in the form of vocational testimony supporting a finding of disability; and 5) failed in his obligation to develop the record fully.

This Court finds that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled. Moreover, this Court disagrees with the plaintiff's assessment that ALJ Moon erred in rendering his decision that the plaintiff could perform a range of light work and that there were a significant number of jobs in the national economy which plaintiff could perform.

The ALJ did evaluate the opinions of the plaintiff's treating physician Dr. Cooley. However, the ALJ will give controlling weight to opinions from treating sources only if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with any other substantial evidence in the record. 20 C.F.R. 404.1527(d)(2); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)(the less consistent an opinion is with the record as a whole, the less weight it will be given). Here, Dr. Cooley's opinion is not consistent with his impressions in his progress notes. Dr. Cooley reported that the plaintiff's range of motion of her lumbosacral spine was fairly good in progress notes dated May and August 2002. (T. 103, 104). He noted that her gait was symmetric and she required no assistance or cane. Id. The only medication he prescribed for her was Ibuprofen. Id. During the

course of her treatment, Dr. Cooley noted that the plaintiff was "somewhat inappropriate in describing her degree of distress." Id. Furthermore, Dr. Medalle's findings that the plaintiff was only mildly limited with respect to prolonged sitting, prolonged standing and repeated bending and lifting contradict Dr. Cooley's opinion that the plaintiff was unable to work.(T. 124). Dr. Medalle observed that the plaintiff had a normal gait and could walk on her heels and toes without difficulty. (T. 122) He also noted that she needed no assistance getting on and off the examination table or rising from her chair. (T. 123). Thus, the ALJ did consider the treating physician's opinion, but based on the record gave that opinion less weight.

The ALJ did evaluate the treating physician's mention of fibromyalgia, but after careful scrutiny of the record he failed to find any diagnosis of fibromyalgia that was made in accordance with the American College of Rheumatology's diagnostic criteria for the disease. (T. 15). The record lacks a firm diagnosis confirming that the plaintiff suffers from fibromyalgia. Dr. Daoud noted that the plaintiff "might suffer from hypothyroid problem or might have fibromyalgia because of several tender points and muscle pain." (T. 169). Thus, the ALJ's determination that the plaintiff did not suffer from fibromyalgia is reasonable.

The ALJ also reasonably concluded that the plaintiff's testimony regarding her limitations was not credible. It is well within the discretion of the adjudicator to evaluate the credibility

of the plaintiff's testimony and render an independent judgment in light of the medical and other evidence regarding the true extent of such symptomology. <u>Mimms v. Secretary of Health and Human Services</u>, 750 F.2d 180, 186 (2d Cir. 1984). Here, the plaintiff testified to engaging in fairly normal activities of daily living. She completed light housework, prepared meals, washed laundry, paid bills, drove her car, and cared for her own grooming and hygiene albeit some assistance. (T. 15). Furthermore, plaintiff's anxiety and depression responded well to medication (T. 99, 107, 168, 169, 170). The ALJ found that the plaintiff's allegations of disability were not credible because her mental impairments were in remission. In regards to plaintiff's degenerative disc disease, the ALJ found Dr. Medalle's notes that the plaintiff "walked with a normal gait without any assistive devices, appeared in no acute distress, and was able to get on and off the examining table without assistance" to be inapposite to the plaintiff's subjective alleged symptoms. (T. 17). Thus, the ALJ reasonably concluded that the objective evidence in the record did not substantiate the plaintiff's claim of disability to the extent she alleged.

The ALJ did not ignore substantial evidence in the form of vocational testimony which plaintiff claims supports a finding of disability. He asked the vocational expert whether jobs exist in the regional or national economy for an individual of the plaintiff's age, education, past relevant work experience, and light residual functional capacity which the plaintiff could perform. (T. 225-231).

The vocational expert replied that work that met these requirements did exist for the plaintiff as a laundry sorter, photocopy machine operator, or a small products assembler. Id. Thus, the ALJ reasonably concluded that the plaintiff was capable of making a successful adjustment to a position that exists in significant numbers in the national economy and that the vocational expert's opinion was substantiated by the medical evidence in the record.

Therefore, I find that the ALJ's conclusion is supported by substantial evidence in the record and that the record, read as a whole, presents sufficient evidence to support the conclusions reached by ALJ Moon.

## CONCLUSION

For the reasons set forth above, I find substantial evidence in the record to support the ALJ's conclusion that the plaintiff is not eligible for SSI. Accordingly, the decision of the Commissioner denying the plaintiff's claim is affirmed, the defendant's motion for judgment on the pleadings is granted.

ALL OF THE ABOVE IS SO ORDERED.

                                        S/Michael A. Telesca
                                        
                                      MICHAEL A. TELESCA
                                   United States District Judge

DATED:   Rochester, New York
         May 10, 2006